## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Elena Shklyar, | ) | Civil Action No. |
| | ) | |
| Plaintiff, | ) | Filed Electronically |
| | ) | |
| vs. | ) | |
| | ) | |
| City of Pittsburgh, | ) | |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |

### CIVIL ACTION COMPLAINT

1. This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-1, *et seq.* ("Title VII"), 42 U.S.C. § 1983, and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA").

### THE PARTIES

2. Plaintiff ELENA SHKLYAR is an adult individual with a principal residence in Allegheny County, Pennsylvania.

3. Ms. Shklyar worked for the Defendant City of Pittsburgh for more than 17 years.

4. Defendant CITY OF PITTSBURGH ("City") is a city of the second class located in the Commonwealth of Pennsylvania operating out of the City-County Building located at 414 Grant Street, Pittsburgh, PA 15219.

5. At all times material hereto, the City acted and/or failed to act by and through its agents, servants and/or employees who at all times acted within the course and scope of their employment.

6. At all relevant times, the City was acting under color of state law.

## JURISDICTION & VENUE

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 with respect to Plaintiff's Title VII, ADA, and Section 1983 claims.

8. Defendant City is an employer subject to the provisions of Title VII and the ADA.

9. Defendant City is an entity subject to the provisions of 42 U.S.C. § 1983.

10. Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2) because, at all times relevant hereto, Defendant City conducted business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## ADMINISTRATIVE REMEDIES

11. Ms. Shklyar satisfied the notice and procedural requirements of Title VII and the ADA by filing a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was contemporaneously cross-filed with the Pennsylvania Human Relations Commission ("PHRC").

12. On March 15, 2018, Ms. Shklyar initiated an action alleging discrimination by Defendant with the Pittsburgh office of the EEOC (No. 533-2018-01055).

13. Pursuant to agreement between the EEOC and PHRC, it was the EEOC that assumed investigative control of the underlying complaint.

14. A Notice of Rights letter was issued by the EEOC on August 29, 2018.

15. The action is timely brought as it is initiated within ninety (90) days of the Notice of Rights letter.

16. Ms. Shklyar has exhausted her administrative remedies as to the allegations of this Complaint.

17. In that Ms. Shklyar's charges dually-filed with the PHRC have not been with the agency for more than one year, she will seek to amend this Complaint at a later date when that administrative remedy has been exhausted.

## FACTUAL BACKGROUND

18. Ms. Shklyar, age 55, was born in 1963 in the Soviet Union, and specifically, Ukraine.

19. She arrived in the United States in 1989 as a Jewish refugee.

20. Ms. Shklyar was educated in the Soviet Union, receiving the equivalent of a Bachelor's/Master's hybrid degree in accounting and finance; she also minored in business information systems which focused on computers.

21. Upon arrival in the United States, Ms. Shklyar took additional courses to develop her computer skills.

22. Ms. Shklyar learned the English language while living in the United States, and she speaks English as a second language.

23. Ms. Shklyar obtained United States citizenship in 1995.

24. Ms. Shklyar is married and, in the course of her employment with the City, was the primary earner in her household.

*Background at the City of Pittsburgh*

25. Ms. Shklyar began working for the City of Pittsburgh in an information technology capacity and as a consultant in November 1998, and she worked for the City for more than 17 years.

26. At the time she was hired, Ms. Shklyar was tasked with providing services to the City's information technology platform in anticipation of Y2K.

27. In July 2000, she was offered a full-time position with the City in the Information Systems Department.

28. The department's name was subsequently changed to Department of Innovation and Performance.

*Employment with & Termination from Department of Innovation & Performance*

29. Ms. Shklyar's position was Client Application Developer, and in that capacity, she executed support applications for the software group.

30. For example, Ms. Shklyar's tasks included doing imaging applications for reports. She supported system updates for the City to perform background checks in its Public Safety department.

31. Ms. Shklyar continually worked for the City in an information technology capacity, and her employment focused largely in working and communicating via the computer and other technology platforms.

32. Beginning in 2017, Ms. Shklyar was instructed to also perform administrative functions for the administrative staff while they took lunch breaks.

33. Ms. Shklyar was instructed to perform these functions despite the availability of other administrative staff that were qualified and trained for the position.

34. Ms. Shklyar was instructed to perform this function without any training.

35. Moreover, this function required Ms. Shklyar to frequently answer incoming calls to the department, a function that she found to be humiliating given that English was not her primary language.

36. However, Ms. Shklyar continued to perform that function at the request of her supervisors and despite the fact that it often made her feel uncomfortable and was inconsistent with the function for which she was hired – information technology.

37. Ms. Shklyar was one of the City's most tenured employees in her department.

38. On September 21, 2017, Ms. Shklyar was informed that her position of Client Application Developer 1 in the Department of Innovation & Performance was being eliminated due to lack of work effective December 31, 2017.

39. The City represented it was engaging in a reduction in force, however, the only position in the Department of Innovation & Performance that was eliminated at that time was Ms. Shklyar's.

*Failure to Accommodate Disability*

40. Ms. Shklyar met with various City officials to find alternate employment with the City in light of her position elimination.

41. She was offered an administrative position with the Public Works department.

42. It was represented to Ms. Shklyar that the position involved an office job within the warehouse that could utilize her accounting background.

43. However, the position represented to Ms. Shklyar was not an office position at all.

44. In fact, Ms. Shklyar specifically asked whether she would be working in the office or warehouse of the Lawrenceville facility and was assured she would be in the office.

45. She reported to work on January 2, 2018 only to find that she would be required to perform inventory in a dusty warehouse.

46. In fact, she was only to be in the office for lunch and short breaks with approximately 95% of her working time allocated to functions in the warehouse.

47. Ms. Shklyar had a severe allergic reaction to the warehouse and extraordinary amount of dust.

48. As a consequence, Ms. Shklyar's doctor prescribed steroids and indicated she could not return to work at that location.

49. Ms. Shklyar submitted all appropriate information to the City to seek an accommodation.

50. During this time, Ms. Shklyar also applied for a Business Analyst position in her original Department of Innovation & Performance.

51. Ms. Shklyar was notified that she was eligible and qualified for the position.

52. Ms. Shklyar never received an interview for the position.

53. Ms. Shklyar was required to remain in the warehouse job despite being qualified for an available position in her prior department.

54. Ms. Shklyar was terminated from employment effective February 1, 2018 as the City indicated it could not accommodate her physician's request to remove her from the warehouse because the "essential functions of this position require that you regularly move

around the Warehouse to send and receive deliveries, fill order, manage stock and track inventory."

55.     Notably, none of these essential functions were consistent with the office position as represented to Ms. Shklyar when she accepted the position.

56.     None of these functions are consistent with Ms. Shklyar's employment history, background, training, education and experience.

57.     When given the opportunity to move Ms. Shklyar to a position which would not only accommodate her disability but also was commensurate with her background and experience, the City declined.

*Harm*

58.     The City has a "No Discrimination/No Harassment/No Retaliation Policy" which includes, *inter alia*, "Because the City of Pittsburgh ("the City") is an equal opportunity employer, it is the policy of the City that employees and applicants shall receive consideration and treatment consistent with all equal employment opportunity laws in all terms and all conditions of work. This includes a workplace free of discriminatory and harassing conduct as those terms are defined. The City does not discriminate against anyone on the basis on race, color, religion, ancestry, national origin, place of birth, sex, sexual orientation, familial status, age, or non-disqualifying physical or mental disability, or on any other basis protected by federal, state or local law."

59.     Ms. Shklyar's termination comes after more than 17 years of dedicated employment with the City.

60. Ms. Shklyar was not disciplined for her performance and was not told that she lacked the ability to communicate effectively.

61. There was no indication to Ms. Shklyar that she was performing her work less than satisfactorily.

62. She was terminated due to "lack of work" from a department that has shown consistent growth over the last several years, and more specifically from a department that posted a job opening for a position for which she was eligible and qualified.

63. Of the more than 65 employees in the Department of Innovation and Performance, only nine (9) were hired prior to Ms. Shklyar.

64. In comparing salaries, only individuals hired after 2005 were paid less than Ms. Shklyar.

65. To obtain her Civil Service pension benefits, Ms. Shklyar needed to accrue 20 years of civil service employment; Ms. Shklyar was terminated with 17.5 years of employment.

*Disingenuous Conduct of the City*

66. Subsequent to her termination, Ms. Shklyar sought reinstatement for a position for which the City deemed she was qualified.

67. Not only was Ms. Shklyar qualified for the position, but she obtained additional training at the encouragement of the City to ensure optimum performance in that role only to find out that, subsequent to completing the training, the City withdrew its offer of reinstatement.

68. Any suggestion by the City that Ms. Shklyar was not doing enough or needed to do more to continue in (and later, resume) employment with City is clearly pretextual given that, when Ms. Shklyar received directives from the City, she followed through.

69. It is clear the City had no intention of retaining Ms. Shyklar.

70. Ms. Shklyar's termination is in stark contrast to the City's public proclamations that Pittsburgh is the place for refugees and that this administration wants to serve the refugee community.

71. Ms. Shklyar has faced quite the opposite – ridicule for her speech and ultimately termination after more than 17 years of dedicated service to the City.

## COUNT I

### NATIONAL ORIGIN DISCRIMINATION (TITLE VII)

72. The above paragraphs are incorporated as though each paragraph were set forth fully herein.

73. Ms. Shklyar falls within a protected class on the basis of her national origin – Ukrainian – as set forth in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-1, *et seq.*

74. Ms. Shklyar was treated inequitably in the terms and conditions of her employment.

75. Ms. Shklyar's supervisor, Heidi Norman, commented to employees/co-workers that she had difficulty understanding Ms. Shklyar's English.

76. Specifically, on one occasion, Ms. Norman indicated that she preferred a male employee because "at least we can understand him."

77. In a reduction in force, of the more than 65 positions in her department, Ms. Shklyar's position was the only one eliminated.

78. Ms. Shklyar was informed her position was being eliminated due to "lack of work."

79. Yet, her department, in the two (2) years prior to her termination, hired at least 23 new employees, a clear sign the department was growing at a considerable pace.

80. To the extent the City wished to change the department's focus or phase out some components of the I&T department, that was not communicated to Ms. Shklyar in advance of eliminating her position.

81. Had the City given some directive to Ms. Shklyar to enhance her skill set in another area to ensure continued employment, Ms. Shklyar would have been amenable; that directive did not occur.

82. Instead, upon information and belief, Ms. Norman conveyed to Mr. Lee Haller, Director of the Department of Innovation and Performance, that Ms. Shklyar lacked the requisite skills to remain in the department.

83. Ms. Shklyar maintains she had the requisite background to continue working in Innovation and Performance and that an analysis of her skill set was not reviewed with her prior to eliminating her position or evaluating whether she may be suitable for other employment in the department.

84. Mr. Haller noted at a City Council meeting that it was his personal decision to terminate Ms. Shklyar; her elimination was not requested by the Office of Management & Budget.

85. He stated, "I need to have the best staff in place to meet all the responsibilities on our plate."

86. Upon information and belief, Mr. Haller's statements were supported by his conversations with Ms. Norman and her representations to him regarding Ms. Shklyar.

87. Prior to her termination, Ms. Shklyar was not informed nor disciplined for not meeting her job responsibilities.

88. Prior to her termination, Ms. Shklyar was not informed that she needed to improve with respect to her responsibilities.

89. It was not suggested to Ms. Shklyar that she failed to meet all the department's responsibilities.

90. Moreover, when a position became available in the department and Ms. Shklyar applied, she was informed that she was eligible and qualified for the Business Analyst position based on her experience and qualifications.

91. Ms. Shklyar never received an interview for that position despite her qualifications.

92. The only dissatisfaction expressed to Ms. Shklyar during her employment was that co-workers had a difficult time understanding her given that she speaks English as a second language.

93. As a direct and proximate result of the unlawful conduct of the City, Ms. Shklyar was deprived of her job and lost income in the form of wages, benefits and future job opportunities.

94. The City's conduct as set forth in this Complaint constitutes an intentional and willful violation of Title VII.

95. As a direct and proximate result of the City's unlawful conduct, Ms. Shklyar has suffered physical harm, pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

WHEREFORE, for the foregoing reasons, Plaintiff ELENA SHKLYAR requests the Court grant the relief prayed for hereinafter.

## **COUNT II**

## **RETALIATION (TITLE VII & ADA)**

96. The above paragraphs are incorporated as though each paragraph were set forth fully herein.

97. During her employment, Ms. Shklyar challenged the termination of her position, which was based upon national origin discrimination.

98. During her employment, Ms. Shklyar raised concern over a lack of an ADA accommodation.

99. Ms. Shklyar also applied for a position with the City for which she was eligible and qualified; she never received an interview.

100. Ms. Shklyar was denied an employment opportunity as a consequence of engaging in protected activities.

101. Subsequent to her termination, Ms. Shklyar attempted to seek reinstatement, and at the direction of the City, obtained additional training to assist in the performance of that position only to have the offer revoked once training was completed.

102. Ms. Shklyar's conduct is protected under Title VII's anti-retaliation provision which seeks to protect individuals who oppose employment practices prohibited by Title VII. 42 U.S.C. § 2000e-1, *et seq.*

103. Ms. Shklyar's conduct is additionally protected under the ADA's anti-retaliation provision which seeks to protect individuals who oppose employment practices prohibited by the ADA. 42 U.S.C. § 12203.

104. As a direct and proximate result of the unlawful conduct of the City, Ms. Shklyar was deprived of her job and lost income in the form of wages, benefits and future job opportunities.

105. The City's conduct as set forth in this Complaint constitutes an intentional and willful violation of anti-retaliation provisions of Title VII and the ADA.

106. As a direct and proximate result of the City's unlawful conduct, Ms. Shklyar has suffered physical harm, pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

WHEREFORE, for the foregoing reasons, Plaintiff ELENA SHKLYAR requests the Court grant the relief prayed for hereinafter.

## COUNT III

### DISABILITY DISCRIMINATION (ADA)

107. The above paragraphs are incorporated as though each paragraph were set forth fully herein.

108. Ms. Shklyar's allergic reaction to the warehouse constitutes a disability under the Americans with Disabilities Act in that it impacts her ability to breathe, which is a major life activity included under the Act.

109. Ms. Shklyar provided documentation to the City evidencing her qualifying disability.

110. Ms. Shklyar complied with the City's requirements for seeking a reasonable accommodation.

111. The City indicated it could not reasonably accommodate Ms. Shklyar because the essential function of her position required regular movement among the warehouse.

112. This "essential function" was inconsistent with the position as presented to Ms. Shklyar which indicated she would be working in an office setting and performing accounting functions.

113. When Ms. Shklyar pursued another opportunity, more aligned with her background and experience, the City refused to accommodate her by placing her in that position, despite acknowledging she was eligible and qualified for the position.

114. Instead, the City chose to terminate Ms. Shklyar, indicating that it could not provide a reasonable accommodation.

115. As a direct and proximate result of the City's illegal disability discrimination, Ms. Shklyar was impacted in the terms and conditions of her employment.

116. As a direct and proximate result of the unlawful conduct of the City, Ms. Shklyar was deprived of her job and lost income in the form of wages, benefits and future job opportunities.

117. The City's conduct as set forth in this Complaint constitutes an intentional and willful violation of ADA.

118. As a direct and proximate result of the City's unlawful conduct, Ms. Shklyar has suffered physical harm, pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

WHEREFORE, for the foregoing reasons, Plaintiff ELENA SHKLYAR requests the Court grant the relief prayed for hereinafter.

## COUNT IV

### VIOLATION OF SECTION 1983

119. The preceding paragraphs are incorporated as though each paragraph were set forth fully herein.

120. Ms. Shklyar, a Ukrainian by birth and U.S. citizen since 1995, is a member of a protected class under discrimination laws and was discriminated against in the course of her employment because of her national origin, resulting in a deprivation of her rights and equal protection under the law.

121. The City evidenced a particular animus toward Ms. Shklyar by explicit statements critical of her linguistic characteristics and preference of another individual because "at least we can understand him."

122. The City's conduct as set forth in this Complaint constitutes an intentional and willful violation of Equal Protection Clause of the United States Constitution.

123. The City acted with the purpose and intent to deprive Ms. Shklyar of equal protection under the law because of her national origin.

124. Defendant at all times material hereto was acting under color of state law.

125. As a direct and proximate result of the City's discrimination on the basis of national origin as a deprivation of her rights under the Equal Protection Clause of the United States Constitution, Ms. Shklyar was discharged from employment.

126. As a direct and proximate result of the City's discrimination on the basis of national origin and as a deprivation of her rights under the Equal Protection Clause of the United States Constitution, Ms. Shklyar suffered injuries stated herein including, but not limited to, lost income in the form of wages, benefits, future job opportunities, mental anguish, pain, suffering, inconvenience and humiliation.

127. As a direct and proximate result of the City's unlawful conduct, Ms. Shklyar was deprived of the rights, privileges and immunities available to her under the law.

WHEREFORE, for the foregoing reasons, Plaintiff ELENA SHKLYAR requests the Court grant the relief prayed for hereinafter.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Plaintiff ELENA SHKLYAR requests that the Court grant the following relief against Defendants including, but not limited to, the following:

a) Compensation for past and future lost wages;

b) Compensation for past and future lost benefits;

c) General compensatory damages including but not necessarily limited to, physical harm, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and harm to reputation;

d) Defendants be enjoined from discriminating or retaliating against Plaintiff in any manner prohibited by any of the statutes referenced herein;

e) Expert fees and other costs of suit;

f) Attorney's fees; and

g) Such further legal and equitable relief as this court deems just and proper.

**JURY TRIAL DEMANDED**                    Respectfully submitted,

*s/Nicole Daller*
Nicole Daller, Esquire
Attorney for Plaintiff
P.A. I.D. No.:  312224
1380 Old Freeport Road
Suite 3A
Pittsburgh, PA 15238
Phone:  412.967.9400
Fax:  412.967.0465
E-mail: ndaller@vkhorne.com